**UNITED STATES of America**

v.

**Peter J. CAMIEL.**

**Crim.No. 80–161.**

United States District Court, E. D. Pennsylvania.

Aug. 4, 1981.

Peter F. Vaira, U. S. Atty., E. D., Philadelphia, Pa., for plaintiff.

Nicholas J. Nastasi, Philadelphia, Pa., for defendant.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Now before me is the motion of the defendant, Peter Camiel, for a new trial on the ground that his Sixth Amendment right to adequate representation was violated because his trial lawyer's performance was adversely affected by a conflict of interest. For the reasons that follow, I will deny the motion.

Having already described in some detail the history of this case in another memorandum filed today, I will repeat only those facts which are relevant here. Mr. Camiel, former Chairman of the Philadelphia Democratic County Executive Committee ("City Committee"), was prosecuted, along with three others, on a forty-four count indictment. The indictment alleges a scheme whereby Democratic Party loyalists were given "no show" jobs with the Pennsylvania legislature and charges that in executing this scheme the four defendants violated the federal mail fraud statute. A jury convicted Mr. Camiel on eleven counts of mail fraud but acquitted him on two counts.

The principal argument made in Mr. Camiel's post-trial motion is that his trial attorney, Howard Gittis, did not provide him with adequate representation because of a conflict of interest resulting from Mr. Gittis' former representation of Martin Weinberg. During the grand jury phase of this case, he served as counsel to Mr. Weinberg, who was defendant's successor as Chairman of City Committee and who has been identified by the government as an unindicted co-schemer.

There are several facets to the defendant's conflict of interest claim. First, Mr. Camiel argues that in the context of this criminal matter the interests of Mr. Weinberg were adverse to his interests. Specifically, he contends that his best defense at trial would have been to show the difference between the patronage practices of City Committee under his leadership and those practices as they existed when Martin Weinberg was Chairman. According to Mr. Camiel, unlike Mr. Weinberg, he never recommended people for government jobs with the intention or knowledge that they would not work. Mr. Camiel charges that because his lawyer maintained a continuing loyalty to his former client, he could not and did not develop evidence at trial exposing Mr. Weinberg's participation in abuses of the patronage system. Therefore, it is argued, Mr. Gittis' former representation of Weinberg amounted to an actual conflict of interest which prejudiced defendant Camiel in that Mr. Gittis, constrained by loyalty to a former client, could not pursue defendant's best defense.

Mr. Camiel further argues that while his trial attorney did inform him that he had represented Mr. Weinberg, he did not explain fully the problems and prejudices which might result from the conflict of interest. Accordingly, the defendant maintains that he never waived his right to conflict-free counsel. In addition, the defendant alleges that the government attorneys' failure to alert the Court to this conflict, of which they were aware, constituted prosecutorial misconduct.

The United States responds with the following arguments. First, this case does not involve an actual but rather a potential conflict of interest. That is, the nature of the conflict here is different and far more "speculative" than it is in criminal cases where an attorney represents co-defendants or where a defense attorney must cross-examine a government witness who was previously one of his clients.

The government further argues that under the principles stated in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), in order to show a violation of

the Sixth Amendment and the right to a new trial, a defendant must show that an actual conflict of interest adversely affected the performance of his attorney. According to the United States, Mr. Camiel has not shown any prejudice, and none exists. It is argued that in fact Mr. Gittis took every opportunity during trial to make or to elicit from witnesses damaging statements regarding Mr. Weinberg. The government also challenges Mr. Camiel's post-trial claim that his best strategy of defense would have been to present evidence of the abuse of legislative payrolls by Philadelphia City Committee under the Chairmanship of Martin Weinberg. It argues that this defense would have been disastrous for Camiel because it would have lent support to the view that such patronage abuses were endemic to City Committee. If Mr. Gittis had tried to show that Weinberg as Chairman of City Committee had the power to place and keep "no show" employees on the payrolls of the Pennsylvania General Assembly, he would have undercut Camiel's claim that he had only the power to recommend people for jobs with the legislature and did not know that some of the people he had recommended had become "ghost" employees.

At the government's request, I conducted an evidentiary hearing on the issue of Mr. Gittis' alleged conflict of interest. As a result of testimony and other evidence produced during that hearing, I have concluded that any potential conflict of interest created by Mr. Gittis' prior representation of Martin Weinberg was cured by his disclosures to both Mr. Weinberg and Mr. Camiel. Further, I do not believe that Mr. Camiel has shown that the former representation of Weinberg adversely affected Mr. Gittis' representation of him.

During the hearing, Mr. Gittis testified that on the request of then Chairman, Martin Weinberg, he represented Philadelphia City Committee during the grand jury phase of this case in connection with two subpoenas for documents served on it.

Subsequently, Mr. Gittis represented Mr. Weinberg in an "informal" interview with the government attorneys regarding the investigation. Mr. Gittis further testified that after the indictment was handed down, he was contacted by Richard Gerber, an attorney acting on behalf of Mr. Camiel, about representing Camiel. Mr. Gittis stated that he warned Gerber of the potential conflict created by his prior representation of City Committee and Weinberg. Before agreeing to meet with Mr. Camiel, Mr. Gittis spoke with Mr. Weinberg, with David Glancey, who was the new Chairman of City Committee, and with Mr. Meyerson, the government attorney, about the potential conflict. Both Weinberg and Glancey, who are lawyers themselves, told Gittis that they did not object to his proposed representation of Mr. Camiel in this case. The government attorney assured Mr. Gittis that he would not move for Gittis' disqualification should he decide to defend Mr. Camiel.

During the initial meeting with Mr. Camiel, Mr. Gittis described his former representation of City Committee, of Mr. Weinberg and of former Mayor Rizzo, a bitter enemy of Mr. Camiel, and asked him if he had any objection. He did not. Mr. Gittis testified that he was sure that Mr. Camiel understood the nature of his prior representation of Weinberg. As a result of information discovered pre-trial which suggested wrongdoing on the part of Mr. Weinberg, Gittis met again with his former client to discuss the issue of conflict of interest. Despite Mr. Gittis' warning that he would have to attack Weinberg in order to defend Camiel and his renewed offer to withdraw as counsel to Camiel, Weinberg reaffirmed that he had no objection to Gittis' representation of Camiel.

Defendant's testimony at the evidentiary hearing did not differ substantially from that of his trial attorney but rather showed a different perspective. In answer to my questions, Mr. Camiel conceded that he had been told about Mr. Gittis' former represen-

tation of City Committee and Martin Weinberg and that he had not objected. His principal complaint now, viewing his trial in hindsight, appears to be that none of his lawyers fully explained the dangers attendant to being represented by a lawyer who had represented an unindicted co-schemer during the grand jury phase of the case. This complaint seems to be part of a general feeling that Mr. Camiel has that his trial lawyers neglected him, failed to keep him informed about what was going on at trial and did not consult him concerning decisions important to his case. This view conflicts with that of Mr. Gittis, who testified that Mr. Camiel participated more actively in his trial than any client he ever had. It is not surprising that the defendant now has this perspective; however, there is nothing in the record supporting his contention that his trial lawyer's representation of him was adversely affected by a conflict of interest.

Since the defendant did not object at trial to Mr. Gittis' representation, the analysis in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), controls the conflict issue in this case. *Sullivan* involved a petition for habeas corpus of a defendant who alleged that his Sixth Amendment right to effective assistance of counsel had been violated because his trial lawyers also represented his co-defendants, whose interests were in conflict with his. The Third Circuit granted his petition, holding that a criminal defendant who has been represented by the same counsel as a co-defendant is entitled to a reversal of his conviction whenever he shows the possibility of conflict of interest or prejudice as a result of that dual representation. *U. S. ex rel. Sullivan v. Cuyler*, 593 F.2d 512, 519–20 (3d Cir. 1979). Disagreeing with the Court of Appeals, the Supreme Court vacated and remanded the case. The Court held that

> a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.

446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980)

Mr. Camiel has not shown that the interests of Weinberg were adverse to his and therefore has not proved an actual conflict of interest. This case does not involve dual representation of co-defendants. While the government alleges that Camiel and Weinberg were co-schemers, it does not contend that they participated in the scheme simultaneously. Indeed, under the government's theory of the case, Mr. Weinberg's participation in the scheme did not begin until after Mr. Camiel had become an inactive member of the scheme. In addition, Mr. Weinberg was never indicted. Therefore, this case does not present the situation where one party can exculpate himself by incriminating another. Moreover, the evidence also establishes that Mr. Gittis disclosed the potential conflict to the interested parties and obtained waivers from them.

The record does not show that Mr. Gittis' performance as defendant's trial counsel was adversely affected by his former representation of Mr. Weinberg. The prejudice alleged by Mr. Camiel is that Mr. Gittis could not and did not pursue his best defense, the presentation of evidence of the involvement of Mr. Weinberg in patronage abuses. During the hearing on this motion, Mr. Gittis testified that he considered calling witnesses, including Mr. Weinberg, to present this defense. However, ultimately he rejected it because, in his view, it presented greater risks than possible benefits. Gittis decided that a defense emphasizing the misdeeds of Weinberg, Camiel's successor as City Committee Chairman, could prejudice Camiel because the jury might conclude that if there were abuses under Weinberg's leadership, there were probably abuses when Camiel was Chairman.

Mr. Gittis' rejection of this defense was reasonable as Mr. Camiel could not establish his own innocence by vilifying Mr. Weinberg. The trial strategy followed by defendant's counsel was more sensible. By

pointing out the political rivalries between Camiel on the one hand and Weinberg and Cianfrani on the other, he challenged the government's claim of a single scheme. In addition, in his examination of witnesses and in his remarks, Mr. Gittis took every opportunity to distinguish the conduct of Camiel from that of the absent and unindicted co-schemers, Weinberg and Cianfrani.

Because he has failed to prove either an actual conflict of interest or prejudice resulting from his trial attorney's former representation of another client, I will deny Mr. Camiel's motion for a new trial based on an alleged violation of the Sixth Amendment.